ATLAS ACCEPTANCE CORPORATION v. PRATT, District Judge, et al.

No. 5446. Decided January 2, 1935. (39 P. [2d] 710.)

*Thomas & Thomas,* of Salt Lake City, for plaintiff.

*D. J. Wilson* and *W. L. Skanchy,* both of Ogden, for defendants.

STRAUP, Chief Justice.

This is an original proceeding in this court wherein the Atlas Acceptance Corporation was granted an alternative writ of mandate directing the district court of Weber county to grant a change of venue in a cause therein pending wherein W. F. Pickett is plaintiff and the Atlas Acceptance Corporation and the Metropolitan Casualty Insurance Company of New York are defendants, or show cause for not doing so.

The material facts are that in March, 1932, the Atlas Company, a corporation organized under the laws of Utah with its principal place of business at Salt Lake City in Salt Lake county, commenced an action in replevin in the district court of Weber county against W. F. Pickett to recover the possession of an automobile. To get the immediate possession thereof, the Atas Company at the commencement of the action made and filed the usual affidavit and gave the usual undertaking for such purpose with the Metropolitan Company as surety, whereby the property in due course was taken in custody by the sheriff and on April 26, 1932, was delivered to the Atlas Company. The

obligatory portion of the undertaking is that the under-signed "in consideration of the premises and the delivery of the said property to the said plaintiff, do hereby under-take and acknowledge to the effect that they are jointly and severally bound in the sum of Seven Hundred ($700.00) Dollars, being double the value of said property as stated in the affidavit, for the prosecution of the said action and for the return of the said property to the defendant, if the return thereof be adjudged, and for the payment to the said defendant of such sum as may be from any cause re-covered against the said plaintiff."

On April 28, 1932, two days after the property was de-livered to the Atlas Company, the action on its motion was dismissed. So, in March, 1933, Pickett brought an action in the district court of Weber county on the undertaking against the Atlas Company and the Metropolitan Company, its surety, wherein the proceedings in the replevin action are alleged and that the Atlas Company, when the auto-mobile was delivered to it April 28, 1932, sold and disposed of it and converted it to its own use, and that it and the Metropolitan Company failed and refused to return it to Pickett who at all times was the owner thereof, to his dam-age in the sum of $700 and $50 attorney's fees. In due time the Atlas Company appeared in the action, filed an affidavit of merits, averred that it was a corporation organized under the laws of Utah with its principal place of business at Salt Lake City, Salt Lake county, and was a resident of and resided in that county; that, if the under-taking alleged in the complaint was entered into by the Atlas Company (it was not signed by it), it was entered into at Salt Lake City; that whatever delicts or wrongs or omissions alleged in the complaint (all of which were de-nied), if committed, were committed in Salt Lake county; that summons in the action was served on the Atlas Com-pany in Salt Lake City, the place of its residence; and that the Metropolitan Company was a corporation organized under the laws of New York and authorized to do business

in the state of Utah, with its office and principal place of business at Salt Lake City; and further averred that none of the obligations of the undertaking or otherwise, as alleged in the complaint, were to be performed in Weber county and, if at all, were to be performed in Salt Lake county, and that whatever breaches or delicts were committed were committed in Salt Lake county and not in Weber county. At the same time the Atlas Company with the filing of the affidavit also filed a general demurrer for want of facts and a special demurrer on the grounds of uncertainty and commingling several causes of action without separately stating them.

Thereupon a motion in accordance with the affidavit was made and filed by the Atlas Company demanding a change of venue of the cause from Weber county to Salt Lake county for trial. No counter affidavits were filed. The motion on objections of Pickett was denied. Thereupon the Atlas Company on its verified petition, filed in this court, on substantially the grounds heretofore stated, was granted an alternative writ of mandamus directing the court below to grant the change of venue or show cause. Pickett filed an answer and return on his own behalf and on behalf of the court below admitting substantially all the facts alleged in the petition, but denying the conclusions that the cause was triable only in Salt Lake county, and averred that it also was triable in Weber county, for that the obligations of the undertaking were to be performed in Weber county and not in Salt Lake county, and that the alleged breaches thereof occurred in Weber county.

The disposition of the question hinges largely on a construction of our statute, R. S. Utah 1933, 104-4-4, which provides:

"When the defendant has contracted in writing to perform an obligation in a particular county of the state and resides in another county, an action on such contract obligation may be commenced and tried in the county where such obligation is to be performed or in which the defendant resides."

After enumerating other provisions not here material, the statute, section 104-4-7, further provides that, in all other cases, the action must be tried in the county in which the cause of action arises or in the county in which any defendant resides at the commencement of the action, and that, if any such defendant is a corporation, any county in which such corporation has its principal office or place of business is to be deemed the county in which such corporation resides within the meaning of such section.

The provisions of the statute were considered by this court in the cases of *Emerson Brantingham Co.* v. *Giles*, 53 Utah 539, 174 P. 181, and in *Buckle* v. *Ogden Furniture & Carpet Co.*, 61 Utah 559, 216 P. 684. In the latter case this court, among other things, said that the Legislature intended to establish the general right of persons sued to have the action tried in the county where one of them resides, and that actions which may be tried elsewhere are limited and restricted to those which the statute itself excepts from the general rule. One of the exceptions is section 104-4-4, supra.

The question thus is, did the defendants in the action brought in Weber county against them, by the undertaking sued on, contract in writing to perform their obligation— the return of the automobile to Pickett if return thereof was adjudged and pay such sum as might be recovered against them—in Weber county? It *is* conceded that no such express obligation is contained in the undertaking and no place expressly stated therein where such obligations are to be performed. It is the contention of the Atlas Corporation that, to bar it from the privilege of having the venue changed to its residence, it is essential that it be made to appear on the face of the written contract itself that it by express terms had agreed to perform the obligation at or in a place or county other than in the county of its residence; while, on the other hand, it is the contention of Pickett, the plaintiff bringing the action, that it is enough if by *necessary implication* it is made to appear

that performance was to be had in the county where the action was brought. To support its contention the Atlas Company chiefy cites and relies on the cases of *Cohen* v. *Munson,* 59 Tex. 236; *Eyres* v. *Crockett State Bank* (Tex. Civ. App.) 223 S. W. 268; *Prader* v. *Nat. M. Acc. Ass'n,* 107 Iowa, 431, 78 N. W. 60, 61; *Independent School Dist.* v. *Reichard,* 39 Iowa, 168; *Hunt* v. *Bratt,* 23 Iowa, 171; *Moyers* v. *Nursery Co.,* 125 Iowa, 672, 101 N. W. 508; *Wixom* v. *Hoar,* 158 Iowa, 426, 139 N. W. 890.

Texas had a statute (Rev. St. 1897, art. 1198 (5) now Vernon's Ann. Civ. St. art. 1995(5), very similar to section 104-4-4, supra, of our statute, and which provided that "where a person has contracted in writing to perform an obligation in any particular county, in which case suit may be brought either in such county, or where the defendant has his domicile." In *Cohen* v. *Munson,* supra, under the Texas statute, the court held that the exception contained in the statute—where one contracted in writing to perform an obligation in a particular county—did not apply to a surety on an administrator's bond in the administration of an estate commenced and had in a county different from that of the surety's residence, when such bond did not require the surety to answer for the defalcation of its principal in any particular county. The court said the contract of the sureties was to pay moneys to a certain amount in case their principal did not well and truly perform his duties as administrator, *but not to pay in any particular place,* so that there was no express contract to perform the obligation in the county where the administrator was to perform his duties, a county other than the residence of the sureties; that such obligation to pay in the county other than the residence of the sureties could *not be implied* from the terms of the instrument itself; that the mere fact that the administration was opened and carried on in a county other than the residence of the sureties was not sufficient to compel the sureties to answer there for the default of their principal committed in the course of such administra-

tion; that to perform the duties of administrator and to pay in case of failure to do so were two different contracts, the first to be discharged at one place and the second maybe at another; that the first was the obligation of the principal and the second the agreement both of himself and of his sureties. Said the court further:

"To entitle a plaintiff to sue in a county other than the residence of the defendant, he must bring his case clearly within one of the exceptions of the statute. The fifth exception seems to contemplate that the instrument of writing should plainly provide that the obligation for the breach of which the defendant is sued is to be performed in a county different from that in which the defendant resides. We do not consider that an administrator's bond, under the statute, compels the surety to answer for the defalcations of his principal in any particular county, and hence that he must be sued in the county of his residence."

To that effect is also *Eyres* v. *Crockett State Bank,* supra.

The Iowa statute (Code 1873, § 2581) provided that:

"When, by its terms, a written contract is to be performed in any particular place, action for breach thereof may be brought in the county wherein such place is situated."

In considering it, the Iowa court, in *Prader* v. *Nat. M. Acc. Ass'n,* supra, held that an action on a bond to secure the performance of a decree which merely makes the signers liable for damages for nonperformance is a personal action which must be brought in the county where the defendants reside; that, when by its terms a contract is to be performed in any particular place, suit may be brought in the county where such place is situated, does not authorize suit to be brought against a defendant in a county where *by implication merely* he was to make the payment; that the promise to pay or perform in the particular place must have been in terms.

In *Moyers* v. *Nursery Co.,* supra, under the statute above referred to, the Iowa court held that to authorize a suit on a contract against a nonresident of a county in which the

action was brought, it must *appear in terms from the agreement* that there was to be performance in the county in which the action was brought, otherwise the defendant's application for a change of venue should be granted.

In *Wixom* v. *Hoar,* supra, the same court held that an action must be brought in the county in which the defendant resides, unless founded on a *written contract expressly providing for performance at some other place,* and that a contract *by implication* will not confer jurisdiction in a county other than that of the defendant's residence.

Pickett, the defendant herein, says:

"While it is true that the bond does not specify the place of performance, it is by clear inference to be performed in Weber County," where the replevin action was commenced.

He cites 40 Cyc. 92, where it is said:

"The statutes of a number of states permit the bringing of an action for breach of contract in the county where the contract is to be performed. It has been held that the contract need not contain an express provision or designation of the place of performance, it being sufficient if the contract *must necessarily be performed* in the county where the suit is brought." (Italics added.)

But one case, that of *Darragh* v. *O'Connor* (Tex. Civ. App.) 69 S. W. 644, is cited in support of the last sentence of the text. Cases also are cited from Montana and Colorado. *State* v. *District Court,* 54 Mont. 603, 172 P. 1030; *Stiemke* v. *Jankovich,* 72 Mont. 363, 233 P. 904; *People* v. *District Court,* 70 Colo. 540, 203 P. 268. But the statutes of these states are different from section 104-4-4, supra, of our statute. The cases therefore are of no particular aid to the defendants herein. In the Colorado case under their statute it is said that an agreement to pay money, where no place is mentioned, is payable where the creditor resides. In such case under our statute a debtor is privileged to have the case tried in the county of his residence. *Buckle* v. *Ogden Furniture & Carpet Co.,* supra. The case of *Metropolitan Loan Co.* v. *Reeves* (Tex. Civ. App.) 236 S. W. 762, also is cited where it is held that "a 'check' is an

unconditional order on a bank or banker to pay a specified sum of money to the person named, or order, or to bearer on demand; and such checks are negotiable paper and payable at the banking house of the banker within banking hours," and that in such case under the Texas statute to sue the defendant in a county other than his residence it is not necessary that the contract in express words shall require performance in a particular county; "the *necessary implication* from the context of the instrument of performance in a cetrain county being sufficient." Such conclusion was reached because "the check was payable in San Antonio [at the bank] and nowhere else, and Reeves [the party sued] bound himself to pay it there if it was not honored by the bank," and hence he was suable in that county or in the county of his residence. 9 C. J. 69, is also cited where it is stated that "a bond given under a decree of court must be performed at the place where the court exercises its jurisdiction." But such language is used in connection with a different subject-matter and not on the question or subject of venue.

However, in 67 C. J. 30, under the subject "Venue," the author says:

"By express provision of the statutes in some jurisdictions where a contract is to be performed or, as is added by some statutes, where it is made payable in a particular place, an action thereon may be brought in the county wherein such place is located. Such a provision furnishes an exception to the general rule that defendant must be sued in the county wherein he resides, and confers a purely statutory right. It applies only to contracts which by their terms are to be performed or under which payment is to be made in a particular place, but where such terms exist they permit suit to be brought in the county fixed by them, although the defendant resides in another county."

On page 33 the author further says:

"To bring a contract within the operation of the statutes of the character under consideration the obligation to perform in a particular county must be plainly present either under the express terms of the contract or by necessary implication therefrom, and

venue cannot be conferred on a doubtful construction of the contract."

On page 34 the author further says that:

"In determining whether one has contracted in writing to perform a contract in a particular county, the written contract, if one exists, must alone be looked to, any parol agreement being immaterial."

In the case of *Stiemke* v. *Jankovich et al.*, supra, *Stiemke* at Billings, Yellowstone county, Mont., delivered to Jankovich et al., a player piano under a contract by the terms of which the defendants were to transport the instrument to Bear Creek, Carbon county, where they resided, there to have the use of the instrument at a monthly rental of $50 with option to purchase it for $250, they to keep the instrument insured for the benefit of plaintiff, and, if at any time the agreement proved unsatisfactory, they were to return the instrument to Billings. The defendants failed to keep the instrument insured. The agreement proving unsatisfactory, defendants promised to return the instrument to plaintiff at Billings, but failed to do so. It was thereafter destroyed by fire, and the action on breach of contract brought in Yellowstone county. The application of the defendants for a change of venue to Carbon county on account of their residence was denied. The ruling was affirmed. But, as is seen, the contract expressly provided the instrument was to be returned to Billings in the county where suit was brought. As already observed, Montana did not, so far as disclosed by the opinion, have a statute corresponding to section 104-4-4, supra, of our statute. Though there had been such a statute, yet *the express terms* of the contract there considered require performance at a place other than the residence of the defendants.

In considering cases and texts on the subject, a distinction between questions of jurisdiction or of the place where the cause of action arose or accrued and of mere venue must be observed. That is clearly indicated in the case of

*Sanipoli* v. *Pleasant Valley Coal Co.*, 31 Utah 114, 86 P. 865, 10 Ann. Cas. 1142. The action brought by Pickett in Weber county on the undertaking was one in personam and transitory. The court had jurisdiction of subject-matter. It also by process served had jurisdiction of the person of the defendants. The action here, thus, was not a question of jurisdiction either of subject-matter or of person. It was one merely of venue. The action brought by Pickett against the defendants on the undertaking being one in personam and transitory, the venue could be laid in any county, and under the statute service of summons could be had on the defendants in any county of the state. But when an action is brought in a county other than the county of the defendant's residence, he is entitled to a change of venue to the county of his residence, unless the case comes within the exceptions enumerated in the statute, one of which is that when the defendant contracted in writing to perform the obligation in a particular county of the state and resides in another county. In such case to bar the defendant from having the case transferred for trial to the county of his residence it must *expressly or by necessary implication* be made to appear on the face of the contract itself that the obligation was to be performed in the county where the action was brought. Confessedly, there were here no such express terms. Let it be assumed, as is argued, that it may fairly or reasonably be inferred that the automobile, if so adjudged, was to be returned in the county where the action was commenced and where the automobile was taken from the defendant and delivered to the plaintiff in the replevin action; but in default thereof it is not so inferrable that the plaintiff there was also to pay the defendant whatever sum might be recovered against it. But from the language of the undertaking sued on, neither of such performances in the county where the action was brought is "necessarily implied." The term "implied" or "implication" often is used in different senses dependent upon the subject-matter concerning which it is used, whether in the

construction of statutes, contracts, or wills and the like, in some of which the term is used more flexibly than in others. Ordinarily speaking, it may be said that a fact or thing is implied when it arises out of that which is directly or expressly declared or included or embraced therein or deducible therefrom. But when we have the term "necessarily implied," or "by necessary implication," the meaning thereof is more restricted or limited. Thus it is said that the term "necessary implication" is that which leaves no room to doubt, *Whitfield* v. *Garris,* 134 N. C. 24, 45 S. E. 904, and that "necessary implication" in the case of the construction of instruments means not natural necessity, but so strong a probability of intention that an intention contrary to that which is imputed cannot be supposed, *Tuttle* v. *Woolworth,* 74 N. J. Eq. 310, 77 A. 684. So, too, *Calloway* v. *Calloway,* 171 Ky. 366, 188 S. W. 410, L. R. A. 1917A, 1210, and *Galloway* v. *Durham,* 118 Ky. 544, 81 S. W. 659, 111 Am. St. Rep. 300. The Kansas court in *Foster* v. *Board of Education, etc.,* 131 Kan. 160, 289 P. 959, 961, puts the proposition thus:

"A necessary implication does not mean to shut out every other possible or imaginary conclusion, and from which there is no possible escape, but means one leading to such a conclusion as, under the circumstances, a reasonable view impels us to take, the contrary of which would be improbable or absurd."

Thus, in view of the authorities, the conclusion is reached that neither by express terms nor by necessary implication is it made to appear on its face that the undertaking sued on was to be performed in Weber county. The Atlas Company therefore was entitled to have the case transferred to Salt Lake county for trial. The alternative writ heretofore granted is made permanent, and the court below directed to transfer the case from Weber county to Salt Lake county. No costs are allowed against the judge of the district court, but, inasmuch as Pickett resisted and objected to the motion for a change of venue and in this court defended the ruling of the court below, costs on this proceed-

ing are allowed against Pickett and in favor of the Atlas Company.

ELIAS HANSEN, FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.