## NILES et al. v. UNITED STATES OZOCERITE COMPANY et al.

No. 2167. Decided January 17, 1911 (113 Pac. 1038).

1. BILLS AND NOTES—CONSIDERATION—PRESUMPTION. When a note is negotiable, it is presumed to be based on a good and valid consideration. (Page 370.)

2. FRAUD—PRESUMPTIONS. A court of equity cannot presume that corporate officers were guilty of fraud in issuing notes and trust deeds to themselves and other servants for money advanced and for services, where their acts are open to a reasonable explanation. (Page 371.)

3. CORPORATIONS—FRAUD—EVIDENCE. In an action on notes and to foreclose a trust deed given for money advanced and for services to employees and officers of a corporation, evidence held insufficient to show such fraud on the part of the payees as to vitiate the notes and trust deed. (Page 372.)

Appeal from District Court, Fourth District; *Hon. J. E. Booth,* Judge.

Action by Milton C. Niles, trustee, and another, against the United States Ozocerite Company and others.

Judgment for defendants. Plaintiffs appeal.

REVERSED AND REMANDED, WITH DIRECTIONS.

*M. E. Wilson* for appellants.

*Clinton Reed* for respondents.

FRICK, C. J.

This is an action in equity to recover judgment on thirty promissory notes and to foreclose a trust deed or mortgage, which was given to secure said notes. The notes were made and delivered in the name of the United States Ozocerite Company, hereafter styled "company," to a large number

of payees, as evidence of the several amounts ranging from twenty-five dollars, the lowest, to one thousand, two hundred dollars, the highest, which, it is contended, were owing by said company to the payees. The trust deed was by said company made and delivered to the appellants as trustees for all of the payees of said notes, and was given to secure the payment thereof. The notes were dated at different times, commencing with the 16th day of October, 1907, and ending with the 4th day of January, 1908. Most of the notes became due and payable on January 15, and the remainder on February 1, 1908. The trustees commenced the action, and in their complaint substantially stated the facts just referred to.

The company filed an answer, in which, after admitting its corporate capacity, it, in substance, denied that the aforesaid notes were for a valuable consideration, or at all executed and delivered to said payees, and further denied that said company executed or authorized the execution and delivery of the trust deed to said trustees. This answer was verified by one John A. Voorhees, a stockholder of said company. Said Voorhees also intervened in said action, and in his pleadings practically set up the same defense to said notes and trust deed that the company had set up in its answer. There were also some averments contained in the pleadings of said Voorhees, whereby he charged that a conspiracy existed on the part of the payees of said notes to defraud said company in obtaining the same, and that some of said payees were officers of said company when said notes and trust deed were executed. There were also other parties who interevened in the action, who sought and were given the relief prayed for; but what was done in that regard is not assailed on this appeal, and hence requires no further consideration.

Upon substantially the foregoing issues a trial was had to the court, resulting in findings which, so far as material to this appeal, in substance are: That all of the promissory notes and the trust deed before mentioned "were executed by persons acting as officers of the defendant United States

Ozocerite Company," and "that in issuing said notes and said trust deed, the persons who were acting as directors of said United States Ozocerite Company, took an unfair advantage of the knowledge they had possessed of the United States Ozocerite Company, and the said persons were neither equitably nor of right entitled to issue said notes or to give said mortgage or trust deed to secure the same; that their action in so doing was fraudulent, and constituted a fraud on the said United States Ozocerite Company and the stockholders thereof, and that the action of said directors in issuing said notes and trust deed was the result of a fraudulent confederation of said persons so acting as directors, owning less than one-half of the stock of said corporation, to cheat and defraud said United States Ozocerite Company and the said John A. Voorhees and his associates." There are no other specific findings of facts. There are some general findings, however, to the effect that certain allegations contained in the pleadings are true, and that others therein contained are untrue.

Upon these findings the court made conclusions of law that the company and said Voorhees "are entitled to a decree of this court canceling and declaring void the promissory notes sued on," and also a "decree . . . canceling and declaring void the trust deed made to secure said promissory notes." A decree in accordance with the findings and conclusions as aforesaid was duly entered. The court in said decree not only canceled said notes and trust deed, but, without finding that said notes were without consideration and not based upon valid claims, refused the relief, with the proviso, however, that the payees of said notes may commence action against said company for any claims they might have against it. The trustees appeal from the judgment and decree to the extent only that said decree declared said notes and trust deed invalid.

There are practically two questions presented for review: (1) Are the findings sustained by sufficient evidence? and (2) do the findings support the conclusions of law and judg-

38  Utah—24

ment? Even these two questions blend and may be considered together. The evidence, documentary and oral, adduced at the trial is very voluminous, and much is contained in the record which, in our judgment, is entirely immaterial to the questions to be determined, as aforesaid. In view that the findings, in our judgment, cannot be sustained for want of evidence to support them, it becomes impracticable to set forth all of the evidence, or even to make a condensed statement thereof. To attempt this would be like copying the contents of an entire volume, for the purpose of showing that it does not contain certain matters. We shall therefore only in a general way, and as briefly as possible, give our reasons why the decree as against the appellants cannot be sustained.

The notes sued on were all negotiable in form, and thus were presumed to be based upon a good and valid consideration. But, in addition to this, counsel for the company produced a witness (one of the payees) from whose testimony it affirmatively appears that the thirty notes covered by the trust deed aggregated nine thousand, three hundred and ten dollars. The witness went into detail, and, so far as he was required to explain, he testified that of the whole amount the company received, either in cash or services rendered to it, the sum of six thousand, nine hundred and twenty-five dollars. As to the remaining two thousand, three hundred and eighty-five dollars, he made no detailed statement. The only apparent reason, however, for not doing so, was that he was not questioned with regard thereto. The witness did, however, in general terms, testify —and this is not disputed—that the company did receive full consideration for the whole of the claims. Some of the money, in some instances, had been advanced to the payees or by some others who had assigned their claims to the payees some time before the notes were given. The witness also went into some detail with respect to the reasons why certain transactions were had, and, to some extent, at least, explained the causes for the internal dissensions of the stockholders, of which there appears to have been a great deal,

and why some of them advanced money to the company, and why others did not. There is not a word of direct evidence which in any way impeaches or contradicts the testimony of this witness or the books of the company, which the witness had before him, and the entries in which he fully explained.

Neither the company nor the intervener, Voorhees, made the slightest attempt to impeach the consideration for the notes, but they insisted, and now insist, that, in view of certain suspicious circumstances to which they point, and because some of the payees were officers of the company when the notes were made, therefore the court should not recognize the notes and trust deed as valid. While, in the absence of an explanation, there are some circumstances disclosed by the evidence which might lead one to suspect that the officers of the company were not as careful of its interests as they should have been under all the circumstances, yet practically all of the circumstances point as much to the want of good judgment on the part of the officers as they do to a desire on their part to injure the company. Such being the case, and especially where a reasonable explanation is made, a court of equity cannot presume that the officers were guilty of fraud. It is evident from the whole record that, if the company had been prosperous, or if the payees of the notes had been willing to receive treasury stock of the company for their claims at such a price as the minority stockholders placed thereon, no one would have seriously complained of the claims preferred by the payees. The mere fact that the company's business proved unsuccessful, and that to pay the claims might seriously affect its credit and standing, does not make the cliams dishonest, nor confer power upon a court of equity to declare them so. It is quite evident that the court could not discover any specific acts of fraud, or it would have so found.

Moreover, in view of what has been said, the courts findings, expressed as they are in the form of conclusions, are entirely too meager to sustain a judgment or decree canceling the notes and trust deed. Nor can we see, as against the company and Voorhees, at least, why the payees of the notes

are not entitled to receive pay for the services rendered and for the cash, or its equivalent, advanced by them to the company. Nor is it made apperant, if they had valid claims, why they should not have them secured by the company. If the claims of the payees in the notes came in conflict with creditors of the company, who were strangers to it, a different question might arise, and a court of equity, in view of the relationship existing between the payees and the company, would, no doubt, take care not to postpone a creditor's claim to that of an officer, unless the latter's claim were shown to be more equitable than the former's. As between teh company or Voorhees, however, and the payees, the payees, so far, at least, as this record discloses, have the equities in their favor. Nor is there any question that, in view of the evidence and findings of the court, the officers who made the notes and trust deed had not ample authority to execute them on behalf of the company. If, therefore, there is no fraud, or some act or omission on the part of the payees amounting to a fraud, then the court must enforce the notes the same as it would enforce any other corporate obligation.

From a careful examination of the entire evidence, we have been unable to discover anything which, as between parties to this action at least, would vitiate the notes or the trust deed sued on. The findings and conclusions of law and the decree, in so far as they affect the claims covered by the notes and trust deed, are therefore set aside and reversed, and the cause is remanded, to the district court, with directions to make findings and conclusions of law in accordance with the views herein expressed, and to enter a judgment and decree of foreclosure, and to grant the relief prayed for by the appellants in their complaint. In so far as the present decree of the court is not in conflict with the foregoing, and in so far as it does not affect the right of appellants to have judgment on the notes and a foreclosure of the trust deed, the present decree shall remain as it now is. Appellants to recover costs on this appeal.

McCARTY and STRAUP, JJ., concur.